IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HILL DERMACEUTICALS, INC., <br> a Florida corporation, <br> 2650 South Mellonville Avenue, <br> Sanford, Seminole County, <br> Florida 32773-9311 <br><br> Plaintiff, <br><br> v. <br><br> U.S. FOOD AND DRUG <br> ADMINISTRATION, <br><br> And <br><br> ANDREW C. VON ESCHENBACH, MD., <br> *In His Official Capacity as Commissioner* <br> *of the United States Food And* <br> *Drug Administration,* <br><br> 5600 Fishers Lane, <br> Rockville, MD 20857 <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br><br> Case: 1:07-cv-00552 <br> Assigned To : Lamberth, Royce C. <br> Assign. Date : 3/16/2007 <br> Description: HILL DERM v. USDA <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR WRIT OF MANDAMUS**

## I.     INTRODUCTION

1.     Plaintiff Hill Dermaceuticals, Inc. ("HDI"), by and through its undersigned

counsel, respectfully files this action for declaratory, injunctive, and mandamus relief,

challenging the egregious delay by Defendants, the U.S. Food and Drug Administration and its Commissioner (collectively, "Agency" or "FDA"), in responding substantively to HDI's Citizen Petition. FDA's unwarranted failure to take action on the issues raised in HDI's Citizen Petition within a period nearing five (5) times that required by FDA's own regulations, violates the Administrative Procedure Act ("APA") and HDI's constitutional due process rights. Accordingly, HDI respectfully requests that this Court issue a declaratory judgment in favor of HDI and an injunction or writ of mandamus compelling the FDA Commissioner to take prompt action consistent with the Agency's mandatory obligations and statutory and regulatory requirements.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 551(13), 555, 702 and 706 (the APA); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1361 (mandamus).

3.    The relief requested is authorized pursuant to 28 U.S.C. § 1651 (all writs act); 28 U.S.C. § 2201 (declaratory relief); and 28 U.S.C. § 2202 (further relief). Plaintiff has the right to bring this action pursuant to the APA, 5 U.S.C. §§ 701-706.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 703.

## III.    PARTIES

5.    Plaintiff HDI is a Florida corporation, incorporated under the laws of the State of Florida, with its principal place of business located at 2650 South Mellonville Avenue, Sanford, Seminole County, Florida 32773-9311.

6.      Defendant FDA, which has its principal office at 5600 Fishers Lane, Rockville, MD 20857, regulates prescription drugs under authority delegated to it by Congress and the Secretary of Health and Human Services of the U.S. Department of Health and Human Services, a federal agency headquartered in the District of Columbia.

7.      Defendant Andrew C. von Eschenbach, M.D. is being sued in his official capacity as Commissioner of the FDA.    As Commissioner, Dr. von Eschenbach has ultimate responsibility for the activities of the Agency, including those actions complained of herein; *i.e.,* under the Regulations set forth in 21 C.F.R. §10.30(e)(1), FDA shall rule on the Citizen Petition filed by HDI within 180 days.

## IV.    STATEMENT OF FACTS

8.      HDI is a pioneer manufacturer and marketer of several dermatological products for which it owns a New Drug Application ("NDA").

9.      HDI owns the NDA for Derma-Smoothe/FS® (Scalp Oil) (fluocinolone acetonide), NDA # 19-452 , a unique and innovative drug for the treatment of scalp psoriasis. Derma-Smoothe/FS® (Scalp Oil) is the only low-potency topical corticosteroid that has been granted a full NDA approval by FDA for use under occlusion with the shower cap packaged with the product for the treatment of scalp psoriasis.

10.     HDI is also approved to market under NDA #19-452 Derma-Smoothe/FS® (Body Oil), which is the FDA-referenced drug for atopic dermatitis for age groups two (2) years and above.  Derma-Smoothe/FS® (Body Oil) is the only low-potency topical corticosteroid that has been granted a full NDA approval by FDA for the specific indications of atopic dermatitis/eczema in children (ages two (2) years and above), and adults, with as much as 90%

body involvement. Derma-Smoothe/FS® (Body Oil) is the only topical corticosteroid product

that has been demonstrated through a clinical study not to cause adrenal suppression.

11.     In correspondence to FDA's Office of Generic Drugs ("OGD") dated April 26,

2004, and May 10, 2004, HDI's counsel sought information on the requirements for establishing

the therapeutic equivalence of generic versions of Derma-Smoothe/FS®. In a written response,

dated June 1, 2004, Gary J. Buehler, Director of OGD, stated, in part:

> The issues you raise go beyond DERMA-SMOOTHE/FS,
> and are of significant interest to other manufacturers of
> fluocinolone acetonide products. Although Hill may be affected
> by the outcome of any Agency decision on this issue, other parties
> will be affected as well. Indeed, other parties could be more
> immediately affected than Hill. Moreover, *a decision with respect
> to these issues could have significant implications for future
> Agency decisions.* We believe it is most appropriate to consider
> the issues raised in your request in a public manner. This will
> allow others the opportunity to comment and participate in the
> decision-making process, will allow Hill the opportunity to
> comment publicly on the views and opinions of others, and will
> establish an administrative record on which the Agency may base
> future decisions.
>
> *We request, therefore, that you submit the concerns
> expressed in your letters as a citizen petition* under 21 CFR §
> 10.30.

A copy of Mr. Buehler's letter is attached hereto as Exhibit A (emphasis supplied).

12.     On September 30, 2004, HDI filed a Citizen Petition pursuant to 21 C.F.R. §

10.30 with the FDA. The Citizen Petition was assigned Dkt. No. 2004P-0448 (A copy of the

Citizen Petition is attached hereto as Exhibit B.).

13.     Because HDI's products are the only products that are formulated in a topical

peanut oil formulation, this dosage form presents unique challenges. HDI filed its Citizen

Petition to make FDA aware of these challenges and to raise HDI's concerns well in advance of

any Abbreviated New Drug Applications ("ANDAs") being submitted to FDA.  Since filing its

Citizen Petition, HDI believes that at least one ANDA has been filed with FDA seeking approval

for generic equivalent products of HDI's proprietary Reference Listed Drugs ("RLDs"): Derma-

Smoothe/FS® (Scalp Oil) and Derma-Smoothe/FS® (Body Oil).

14.     On December 13, 2005, HDI filed an Amendment to its Citizen Petition: Dkt. No.

2004P-0448.  In addition, HDI has filed additional evidentiary and other relevant materials in the

administrative record to support its Citizen Petition.   To date, no outside third party has

submitted any materials to this docket.

15.     Pursuant to 21 C.F.R. §10.30(e)(2), the "Commissioner *shall* furnish a response to

each Petitioner within 180 days of receipt of the Petition." (emphasis supplied).  Here, however,

Agency action on the merits of HDI's Citizen Petition has been unreasonably withheld for

approximately 29 months — almost 900 days.  Defendants have failed to act within a period

nearly five (5) times that required.  Under the APA, Plaintiff is equitably entitled to an end to this

marathon delay and business uncertainty.

16.     By letter dated March 24, 2005, Jane A. Axelrad, Associate Director for Policy,

Center for Drug Evaluation and Research (a copy of which is attached hereto as Exhibit C),

provided the following Agency response:

> FDA has been unable to reach a decision on your Petition because
> of the need to address other Agency priorities. . . . We will respond
> to your Petition as soon as possible given the numerous demands
> of the Agency's resources.

17.     Under Section 10.30(e)(2) the Commissioner "shall" make a decision on the

Citizen Petition filed by HDI.  This is an mandatory obligation required of the Commissioner.

He has no discretion.  Further, the Agency's tentative response of March 24, 2005, does not

comply with Section 10.30(e)(2)(iii) because of the excessive and unreasonable length of time that has elapsed, and in light of HDI's belief that FDA is currently considering at least one ANDA for generic equivalents of HDI's RLD products.

18.    Since the March 24, 2005, correspondence, over 700 days or ***quadruple the time required*** have passed with no action taken by the Agency, despite HDI filing additional information in the administrative record — without any specific FDA request — and after an in-person meeting between HDI, its counsel, and OGD Director Buehler.[1]  It is beyond question that the March 24, 2005, response is not "as soon as possible," and does not comply with the Agency's statutory and regulatory requirements to rule on HDI's Citizen Petition.

19.    Notwithstanding the importance of HDI's Citizen Petition, the Agency has unreasonably withheld taking action on HDI's request concerning the requirements to which generic drug manufacturers filing ANDAs, directed to the Derma-Smoothe/FS® products, need to comply.  Contrary to its March 24, 2005, comment on "Agency priorities," FDA is in the process of considering, or may consider, one or more ANDAs prior to the time it renders any decision on HDI's Citizen Petition which was filed before any ANDA was submitted.  In stark contrast to the expressed statement of other priorities and demands on its resources delaying a decision on HDI's Citizen Petition, the Agency is utilizing more time and resources to consider subsequently filed ANDAs, including those that may be directed to HDI's products.  Defendants'

---

[1]    As Office of Generic Drugs' Director, Mr. Buehler is responsible for making recommendations to the Commissioner concerning approval of generic drugs, including addressing the scientific, clinical and regulatory issues included in HDI's Citizen Petition and, specifically, on any ANDA surrogate applications for pending generic drugs for Derma-Smoothe/FS® (Scalp Oil) and Derma-Smoothe/FS® (Body Oil).

commitment of time and resources to rule on HDI's Citizen Petition is far less than that necessary for consideration of a drug application.

20.    HDI's Citizen Petition raises important issues regarding the studies required to establish bioequivalence and therapeutic equivalence that must be considered and can only be addressed during the course of developing and submitting an ANDA for a generic version of the Derma-Smoothe/FS® (Scalp Oil) and Derma-Smoothe/FS® (Body Oil) products. HDI's Citizen Petition states that the FDA must require that any ANDA applicant establish the bioequivalence and therapeutic equivalence of generic versions of the Derma-Smoothe/FS® products by conducting separate and distinct studies with clinical end points in both FDA approved indications, scalp psoriasis, and atopic dermatitis. The Citizen Petition does not seek to preclude the approval of any generic versions of the Derma-Smoothe/FS® products. However, HDI's Citizen Petition specifically requests FDA to make a final decision that bioequivalence studies with clinical end points in the specific patient population, patients with scalp psoriasis and patients with atopic dermatitis, are required to establish bioequivalence and therapeutic equivalence. FDA has permitted ANDA applicants to establish bioequivalence and therapeutic equivalence by simply conducting a vascoconstrictor assay (skin blanching tests) (normally performed on the arm, usually forearm.) FDA sanctions the use of the vasoconstrictor assay as a surrogate marker to establish the bioequivalence and therapeutic equivalence for ANDAs for general and non-specific corticosteroid creams and ointments and other dosage forms that are only approved for a broad indication of treating corticosteroid responsive dermatoses (defined as non-specific skin disease). These general creams, ointments, lotions, foams and gels are totally unrelated and distinguishable from HDI's RLDs. This normal practice by FDA is not, however,

validated as a surrogate marker for the specific approved disease indications of scalp psoriasis or atopic dermatitis for which HDI's products are specifically approved, nor is it validated for use with topical oil dosage forms. The Citizen Petition also seeks an FDA requirement that any approval of a generic equivalent version of HDI's Derma-Smoothe/FS® products must be preceded by evidence that the proposed generic establishes bioequivalence and therapeutic equivalence under use for the specific disease indications of widespread scalp psoriasis and/or atopic dermatitis, and not for some generalized, non-specific, corticosteroid responsive dermatoses indication.

21.    The Citizen Petition further seeks compliance requirements for equivalency as HDI's products are formulated with a specially designed, proprietary, refined peanut oil, which is tested to ensure minimum levels of peanut protein — which otherwise can trigger severe allergic responses in peanut-sensitive individuals. Use of another non-proprietary source of peanut oil by a generic ANDA as a vehicle for the active ingredient must require FDA to set an upper limit for the amount of peanut protein that can be present in the vehicle in order to allay any safety concerns of severe peanut allergic reaction or contact urticaria — a peanut sensitivity that HDI's RLDs are specifically tested to nearly non-detectable levels to exclude peanut protein. Without sensitive testing and the setting of a very low limit for peanut protein, it is impossible for a generic non-proprietary peanut oil to be determined safe or bioequivalent.

22.    Because of the use of corticosteroids in HDI's Body Oil RLD, a safety issue as to adrenal suppression is also present. HDI has conducted specific tests with widespread use of Derma-Smoothe/FS® (Body Oil) (90% body involvement) as required by FDA, and established that no adrenal suppression occurs in children ages two (2) and above. The Citizen Petition

seeks to require this same safety issue also be addressed by any formulation submitted by an ANDA applicant, and seeks to require more specific testing beyond the usual skin blanching equivalence test that the Respondents normally require for some generalized, non-specific, corticosteroid responsive dermatoses indications. Because even slight modifications of the excipients in the formulation may move a corticosteriod from weak to highly potent, without clinical testing, the health and safety of the public would be compromised. In support of this contention, HDI is attaching the affidavit of Howard Ira Maibach, M.D. in support of Citizen's Petition, Docket 2004P-0448 as Exhibit D hereto.

23.    The Agency's egregious delay in acting on HDI's Citizen Petition is further evidenced by a total failure to properly review this Petition under the guidelines set forth in 21 C.F.R. § 10.30(h) during the 29 months HDI's Citizen Petition has been pending.

## V.    CLAIM FOR RELIEF

24.    Plaintiff incorporates by reference, as if fully set forth herein, all of the above allegations included in paragraphs 1 through 23 of this Complaint.

25.    Pursuant to the APA, a reviewing court shall compel agency action unlawfully withheld or unreasonably delayed.

26.    FDA's failure to act on HDI's Citizen Petition within a period nearing five (5) times that required is unreasonably delayed and a violation of the APA and HDI's due process rights.

27.    As a result of FDA's inaction, and given that FDA may approve an ANDA prior to ruling on HDI's Citizen Petition, HDI has suffered and will continue to suffer, absent

declaratory and injunctive relief, irreparable harm for which there is no adequate remedy at law.

28.    By not ruling upon the Citizen Petition and requiring that ANDA applicants establish therapeutic equivalence of generic versions of Derma-Smoothe/FS® (Scalp Oil) and Derma-Smoothe/FS® (Body Oil) by conducting studies with clinical end points in both scalp psoriasis and atopic dermatitis patients, FDA will approve an ANDA without first complying with its preceding regulatory obligation of ruling upon the Citizen Petition which pre-dates all ANDAs directed towards its products.

29.    It is beyond question that FDA has a mandatory obligation to act upon HDI's Citizen Petition. But it has not, and its delay is egregious. The March 24, 2005, letter amounts to no response at all, and is an unsupportable conclusory statement not in compliance with 21 C.F.R. § 10.30(e)(2).

30.    FDA has been known, as an administrative delaying tactic, to withhold rulings on Citizen Petitions regarding ANDAs, and to approve a generic application at the same time it denies a Citizen Petition otherwise pending for years, leaving inadequate judicial relief to a petitioner. HDI runs the risk of the Agency repeating this practice by its continued refusal to act on HDI's Citizen Petition filed years before. If this outcome occurred, HDI would have no adequate remedy at law to stop the manufacture and sale of a generic drug.

31.    Unless FDA is required to comply with its statutory and regulatory obligations, the safety of the public is at risk. Agency approval of an ANDA, without requiring appropriate studies to establish bioequivalence and therapeutic equivalence to HDI's products for the specific disease indications of widespread scalp psoriasis and/or atopic dermatitis, including testing for adrenal suppression and conformance with very low levels of peanut protein in the vehicle,

would create efficacy and safety concerns.  ANDA applicants for generic products that have not conducted the scientifically valid studies with clinical end points in both scalp psoriasis and atopic dermatitis patients to establish bioequivalence and therapeutic equivalence to HDI's Derma-Smoothe/FS® (Scalp Oil) and Derma-Smoothe/FS® (Body Oil), will endanger the public health and safety.

32.    FDA's unreasonable delay in processing HDI's Citizen Petition and its failure to comply with its statutory and regulatory obligations deprives HDI from exhausting its administrative remedies by obtaining a final decision.

## VI.    RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter an order:

A.    Declaring that FDA's egregious delay violates any rule of reason and that its failure to take action on HDI's Citizen Petition is in violation of the APA and HDI's due process rights;

B.    Compelling the FDA, by injunction or writ of mandamus, to make a final administrative decision on HDI's Citizen Petition regarding requirements that must be met by any ANDA to comply with statutory and regulatory requirements and, specifically, to demonstrate that any proposed generic equivalent product have the same active ingredients, strength, labeling, and conditions of use as HDI's RLDs, Derma-Smoothe/FS® (Body Oil) and Derma-Smoothe/FS® (Scalp Oil).  Further, the Citizen Petition requests that any ANDA for a generic fluocinolone acetonide topical oil must demonstrate bioequivalence, which can only be done by conducting studies with clinical end points not using the vasoconstrictor assay;

C.    Requiring FDA to comply with its statutory and regulatory requirements and render a final decision on HDI's Citizen Petition within fifteen (15) days of the date of the Court's Order;

D.    Awarding Plaintiff attorneys' fees and reasonable costs incurred with respect to this action; and

E.    Such other relief as the Court deems just and proper.

Respectfully Submitted

Dated: March 16, 2007.

By:

Simon E. Dance (D.C. Bar No. 436432)
David L. Rosen (D.C. Bar No. 438634)
FOLEY & LARDNER, LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5101
Tel:    (202) 672-5430
Fax:    (202) 672-5399

Larry M. Roth (not admitted in D.C.)
(Fla. Bar No. 20811)
LAW OFFICE OF LARRY M. ROTH, P.A.
1615 Edgewater Drive, Suite 180 [32804]
P.O. Box 547637
Orlando, Florida 32854-7637
Tel:    (407) 872-2239
Fax:    (407) 872-6927

*Attorneys for Plaintiff*
*Hill Dermaceuticals, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2007, I caused copies of the foregoing Complaint and Summons to be served on the following by registered first class mail:

U.S. FOOD AND DRUG
ADMINISTRATION,
ANDREW C. VON ESCHENBACH, MD.,
In His Official Capacity as Commissioner
of the United States Food And
Drug Administration,
5600 Fishers Lane,
Rockville, MD 20857

By: _____
Simon E. Dance (D.C. Bar No. 436432)

# EXHIBIT A



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Public Health Service

Food and Drug Administration
Rockville MD 20857

JUN 0 1 2004

, David L. Rosen, B. S. Pharm, J.D.
Gray Cary Ware & Freidenrich LLP
1625 Massachusetts Avenue NW, Suite 300
Washington, DC 20036-2247

Reference Number: OGD #04-386

Dear Mr. Rosen:

This responds to your letters to the Office of Generic Drugs (OGD) on behalf of your client Hill Dermaceuticals, Inc. (Hill) dated April 26, 2004, and May 10, 2004, regarding the requirements to establish the therapeutic equivalence of generic versions of DERMA-SMOOTHE/FS (fluocinolone acetonide topical oil, 0.01%). Your request relates to the appropriate study method for sponsors seeking to show bioequivalence and therapeutic equivalence of fluocinolone acetonide topical oil, 0.01%.

The issues you raise go beyond DERMA-SMOOTHE/FS, and are of significant interest to other manufacturers of fluocinolone acetonide products. Although Hill may be affected by the outcome of any Agency decision on this issue, other parties will be affected as well. Indeed, other parties could be more immediately affected than Hill. Moreover, a decision with respect to these issues could have significant implications for future Agency actions. We believe it is most appropriate to consider the issues raised in your request in a public manner. This will allow others the opportunity to comment and participate in the decision-making process, will allow Hill the opportunity to comment publicly on the views and opinions of others, and will establish an administrative record on which the Agency may base any future decisions.

We request, therefore, that you submit the concerns expressed in your letters as a citizen petition under 21 CFR §10.30.

Sincerely yours,

Gary J. Buehler
Director
Office of Generic Drugs
Center for Drug Evaluation and Research

# EXHIBIT B



DERMA-SMOOTHE/FS®
SCALP OIL

DERMA-SMOOTHE/FS®
ECZEMA OIL

# Dermaceuticals, Inc.

*Specialty Dermatologicals for Children & Adults*

September 30, 2004

<u>VIA FEDERAL EXPRESS</u>

Dockets Management Branch, HFA-305
Food and Drug Administration
Department of Health and Human Services
5630 Fishers Lane, Room 1061
Rockville, MD  20852

## <u>CITIZEN PETITION</u>

Hill Dermaceuticals, ("Hill") Sanford, Fl., submits this Citizen Petition under the Code of Federal Regulations Part 21, Section 10.30 to request the Commissioner of Food and Drugs to take the following administrative action:

### A.    Action Requested

The Petitioner hereby requests that the Commissioner of Food and Drugs not approve any generic equivalent version of the Petitioner's proprietary drug product, DERMA-SMOOTHE/FS® (fluocinolone acetonide 0.01% topical oil) unless and until Abbreviated New Drug Application ("ANDA") applicants comply with statutory requirements to demonstrate that any proposed generic equivalent product has the same active ingredient, labeling, and conditions of use as the reference listed drug, DERMA-SMOOTHE/FS®.  In addition, any ANDA applicant for fluocinolone acetonide topical ointment must demonstrate bioequivalence which can only be done by conducting studies with clinical endpoints, the same as those established by Petitioner, as discussed below.

Studies with clinical endpoints are necessary to establish bioequivalence and therapeutic equivalence as opposed to the vasoconstriction assay (skin blanching test) which the Agency has used as a surrogate marker to establish the therapeutic equivalence of corticosteroid creams and ointments that contain the general indication for treating corticosteroid responsive dermatoses but is not validated as a surrogate marker for the specific approved indications of scalp psoriasis or atopic dermatitis.  Vasoconstrictor assays cannot and have not been conducted on the scalp.   Moreover, any approval of any generic equivalent(s) of Petitioner's DERMA-SMOOTHE/FS® must also be preceded by evidence that the proposed equivalent has the same safety and efficacy profile under use for the specific indications of widespread scalp psoriasis and/or atopic dermatitis and not for corticosteroid responsive dermatoses.

---

2004P-0448                                                                              CP1

Petitioner specifically requests that the Commissioner withhold approval of any proposed generic equivalent(s) of the Petitioner's proprietary DERMA-SMOOTHE/FS®, (fluocinolone acetonide) topical oil 0.01% without safety, efficacy, bioequivalence[1] or bioavailability studies evidencing results mirroring those found by the original drug in light of its novel and innovative application and delivery systems. Petitioner also requests that the Agency apply inspectional requirements consistently and that each site conducting the proposed generic equivalent(s) requisite bioequivalence studies are subject to audit in order to determine whether these bioequivalence studies were conducted in compliance with the protocol and other good clinical practice requirements.

## B.     Statement of Grounds

Petitioner, Hill Dermaceuticals, manufactures and distributes DERMA-SMOOTHE/FS® (fluocinolone acetonide) topical oil 0.01%. DERMA-SMOOTHE/FS® has been approved by the Food and Drug Administration (hereinafter referred to as "FDA" or "the Agency") for use in adult patients with scalp psoriasis, and in pediatric patients over the age of two years with moderate to severe atopic dermatitis. As part of its original New Drug Application ("NDA") with the FDA, Hill Dermaceuticals conducted and submitted to the Agency three major clinical studies, involving 40 patients, 94 patients and 102 patients, respectively, which demonstrated the safety and effectiveness of the Product for both indications[2]. DERMA-SMOOTHE/FS® (Scalp Oil) is the only topical corticosteroid that is FDA approved for use under occlusion in treating scalp psoriasis. The use of the shower cap that is packaged with the product (two are included in the box) and the corresponding labeling associated with the use of the product under occlusion distinguish DERMA-SMOOTHE/FS® from all other FDA approved topical corticosteroids.

Hill Dermaceuticals' significant experience in the development and manufacture of fluocinolone acetonide topical oil (please note that DERMA-SMOOTHE/FS® is the only topical product currently approved by the FDA that uses a specially designed, proprietary peanut oil vehicle) makes it uniquely situated to comment and to provide insight on the issues involved with establishing the therapeutic equivalence of any proposed fluocinolone acetonide topical oil generic product. There are a myriad of safety, efficacy, chemistry, manufacturing and controls, and bioequivalency, and bioavailability issues that must be addressed by both ANDA applicants and the Agency prior to approval of any generic fluocinolone acetonide topical oil product.

---

[1]     The FDA Advisory Committee on Pharmaceutical Science recently determined, in its April 14, 2004 meeting, that a drug will be considered bio-inequivalent if it does not meet or exceed any of three pharamacokinetic endpoints; (1) area under the curve to a specific time; (2) total area under the curve; (3) the maximum concentration of the drug. Specifically, the committee found that the "area under the curve" parameter should have the primary emphasis. For those products that are not systemically absorbed, the Agency has adopted alternative approaches that utilize validated surrogate markers and/or relevant clinical endpoints to establish bioequivalence.

[2]     A chart is attached hereto as Appendix "A" which summarizes the conduct and outcome of the three major clinical studies conducted on DERMA-SMOOTHE/FS®.

## Statutory and Regulatory Requirements

Section 505(j)(2)(A) of the Federal Food, Drug and Cosmetic Act ("FDCA" or "the Act") provides that with respect to drugs containing only one active ingredient, any person filing an ANDA must demonstrate, among other things, that the proposed abbreviated new drug includes information: (1) to show that the conditions of use prescribed, recommended or suggested in the labeling have been previously approved in the reference listed drug ("RLD"); (2) the active ingredient is the "same"; (3) the dosage form, route administration is the same; (4) to show that the product is bioequivalent; and (5) the proposed labeling has been previously approved. The statutory requirements are paralleled in FDA's implementing regulations at 21 CFR §314.94.

## Inactive Ingredients for Topical Products

In addition to requirements regarding the "sameness" of active ingredients, FDA's regulations also address inactive ingredient requirements for topical dosage forms. A drug product intended for topical use must contain the same inactive ingredients as the RLD, unless the applicant identifies and characterizes the differences and can demonstrate that the differences do not affect the safety and effectiveness of the proposed drug product. *See* 21 C.F.R. §314.94(a)(9)(v).

To meet requirements for approval, an ANDA applicant must meet the applicable statutory and regulatory requirements. The importance of these requirements as they relate to proposed ANDAs for fluocinolone acetonide topical oil are discussed below.

## Pharmaceutical Equivalence Requires That Any Manufacturer Meet Strict Specifications for Processing, Manufacturing and Testing

As you may know, DERMA-SMOOTHE/FS® is formulated with a specially designed, proprietary refined peanut oil. Importantly, the proprietary refined bulk peanut oil NF used in DERMA-SMOOTHE/FS® is heated at a specific high temperature for a period of time to decompose the allergenic proteins. In addition, proprietary peanut oil used in Derma-Smoothe/FS® is routinely tested for peanut proteins using a sandwich enzyme-linked immunosorbent assay test (S-ELISA) kit, which can detect peanut proteins to a very low level. Hill Dermaceuticals fully characterized the proprietary peanut oil and blend of other oils that comprise the vehicle for DERMA-SMOOTHE/FS®, and specifically established an upper limit for the amount of peanut protein that can be present in the vehicle.

Hill Dermaceuticals, of course, would also expect that any other company pursuing a product using another non-proprietary source of peanut oil as the vehicle would be required to set an upper limit for the amount of peanut protein that can be present in the vehicle. Any such test used to measure peanut oil, of course, must be appropriated, validated and be capable of quantifying very low levels of peanut protein. ANDA applicants for a generic version of DERMA-SMOOTHE/FS® must demonstrate that their product meets strict specifications to ensure that peanut protein is not present in the product (or present in quantities that do not raise safety concerns).

3

This issue is of particular concern if the peanut oil used in the formulation is from a foreign supplier. The Agency must require foreign suppliers of peanut oil to implement appropriate specifications and controls to ensure the safety of peanut sensitive patients who use fluocinolone acetonide topical oil. Hill Dermaceuticals knows that the Agency recognizes the importance of this issue that was raised as a result of a study published in the New England Journal of Medicine and the responses published to the study. (NEJM, March 13, 2003, and July 17, 2003.)

In addition, DERMA-SMOOTHE/FS®'s dosage form has unique properties. During the course of formulating, developing and subsequently marketing DERMA-SMOOTHE/FS®, Hill Dermaceuticals has identified that the detergent used in the product is a particularly critical formulation and processing component. The order of addition of the components and other related manufacturing process parameters, e.g., temperature and mixing time can significantly affect the formulation and absorption of the drug product through the skin or scalp. Hill Dermaceuticals has identified that minor changes in the detergent used in the formulation can give rise to loss of product stability. The detergent likely has an impact on the stability of the active ingredient, fluocinolone acetonide. Consequently, Hill Dermaceuticals now places a representative sample lot of DERMA-SMOOTHE/FS® into its accelerated and room temperature stability program when a new lot number of detergent is used in the manufacturing process. In addition, Hill Dermaceuticals believes that accelerated stability testing alone may not be indicative of product stability at the end of the expiration dating period. Manufacturers of a generic version of fluocinolone acetonide topical oil must ensure that their products meet appropriate specifications throughout the products' labeled expiration dating period.

DERMA-SMOOTHE/FS® (Scalp Oil) is the only topical corticosteroid that is FDA approved for use under occlusion in treating scalp psoriasis. The use of the shower cap that is packaged with the product (two are included in the box) and the corresponding labeling associated with the use of the product under occlusion distinguish DERMA-SMOOTHE/FS® from all other topical corticosteroids. Again, any manufacturer must conduct a trial using the proposed formulation under occlusion with a shower cap in order to establish the therapeutic equivalence of any generic versions of fluocinolone acetonide topical oil 0.01% product to Hill Dermaceutical's DERMA-SMOOTHE/FS®. In addition, since Hill Dermaceuticals was required to establish the compatibility of the shower cap with DERMA-SMOOTHE/FS®, any generic manufacturer of fluocinolone acetonide should also establish that the shower cap is compatible with its formulation.

### Bioequivalence Requirements Should Not Be Waived For ANDA Applicants for Fluocinolone Acetonide Topical Oil

Among other requirements, an ANDA manufacturer must provide information that shows that the drug product is bioequivalent to the RLD upon which the applicant relies. *See* 21 C.F.R. §314.94 (j) The core of the bioequivalence concept is an absence of significant difference in the extent and rate of which two different drug products' active ingredients "become available at the site of drug action when administered at the same molar dose under similar conditions in an appropriately designed study. *See* 21 C.F.R. §320.1(e).

4

Because of the unique issues related to a topical oil containing fluocinolone acetonide, the Agency should not grant a bioequivalence waiver for any fluocinolone acetonide ANDA. FDA's requirements for a bioequivalence waiver for topical products are quite limited. Only if a topical product meets the following requirements can a bioequivalence study be waived:

> [It] [c]ontains an active drug ingredient in the same concentration and dosage form as a drug product that is the subject of an approved full new drug application or abbreviated new drug application; and

> [It] [c]ontains no inactive ingredient or other change in formulation from the drug product that is the subject of the approved full new drug application or abbreviated new drug application that may significantly affect absorption of the active drug ingredient or active moiety for products that are systemically absorbed, or that may significantly affect systemic or local availability for products intended to act locally.

21 C.F.R. §320.22(b)(3).

Since formulation, manufacturing and processing parameters for fluocinolone acetonide topical oil may significantly affect systemic or local availability for products intended to act locally, we firmly believe that a bioequivalence waiver is not scientifically or legally warranted and should not be granted for ANDA applicants for fluocinolone acetonide topical oil.

### Pharmacodynamic Requirements

In the past, the Agency has accepted the use of the vasoconstriction assay (skin blanching test) as a surrogate marker to establish the therapeutic equivalence of corticosteroid creams and ointments that contain the general indication for treating corticosteroid responsive dermatoses. While this pharmacodynamic test is appropriate for certain dosage forms containing corticosteroids, it is not a valid surrogate marker for a topical oil that is used to treat scalp psoriasis or atopic dermatitis, the indications clinically proven by Hill Dermaceuticals for DERMA-SMOOTHE/FS® that are more specific than the general indication of corticosteroid responsive dermatoses. The vasoconstrictor assay has never been validated as a surrogate marker to predict clinical efficacy in either of these two diseases.

### Studies With Clinical Endpoints Are Necessary to Establish the Therapeutic Equivalence of Any Fluocinolone Acetonide Topical Oil Product

Since fluocinolone acetonide topical oil is intended for local, topical use and is not systemically absorbed, the only way a company seeking approval for a generic version of DERMA-SMOOTHE/FS® can establish therapeutic equivalence is to conduct studies with clinical endpoints in patients afflicted with two distinct dermatological conditions: (1) scalp psoriasis and (2) atopic dermatitis. Hill Dermaceuticals was required by FDA to conduct separate and distinct clinical trials to support each of the

specific indications for use. Other topical dosage forms containing corticosteroids, e.g., ointments and creams that carry the class labeling general indication of *corticosteroid responsive dermatoses* have been supported using multiple point vasoconstrictor assays to demonstrate pharmacodynamic effects of the drug. Such vasoconstrictor assays are not a valid surrogate maker for drugs use to treat scalp psoriasis nor for widespread atopic dermatitis.

Because DERMA-SMOOTHE/FS® is labeled for the specific indications of the dermatological conditions being treated: (1) scalp psoriasis and (2) atopic dermatitis and the unique nature of the dosage form (DERMA-SMOOTHE/FS® is the only topical oil approved by FDA), companies desiring to establish the therapeutic equivalence of any generic version of fluocinolone acetonide topical oil 0.01% product to Hill Dermaceuticals' DERMA-SMOOTHE/FS® must be required to conduct trials in the specific disease states just as Hill was required to do. Generic companies cannot use a less rigorous test, i.e., the multiple point vasoconstrictor assay to establish therapeutic equivalence when Hill Dermaceuticals was required to conduct clinical trials in the specific disease state as a condition of approval.

**Scalp Psoriasis**

With respect to the indication of **Scalp Psoriasis** in order to demonstrate therapeutic equivalence with DERMA-SMOOTHE/FS®, any generic formulation of fluocinolone acetonide topical oil must conduct studies as follows:

1.    A comparison study with DERMA-SMOOTHE/FS® applying either the reference or test product, once a day, wetting the hair and scalp with water, applying a thin film of the respective study product to the **entire scalp** and covering the scalp with a **shower cap overnight (or for a minimum of 4 hours**.) Efficacy is graded on a weekly basis with the primary efficacy assessment evaluated after week 3 of treatment.

     DERMA-SMOOTHE/FS® is the only corticosteroid formulation that is proven safe and effective under these treatment conditions. In order to establish therapeutic equivalence, any generic formulation must conduct a clinical study under the same treatment conditions and regimen.

2.    Inclusion criteria must be a minimum of 20% scalp involvement. The entire scalp must be graded, not just target areas.

It is well established that the physiology of the scalp is complex and quite different from other parts of the body. Hill Dermaceuticals firmly believes that a study with clinical endpoints is necessary to establish the therapeutic equivalence of any generic versions of fluocinolone acetonide topical oil 0.01% product to Hill Dermaceutical's DERMA-SMOOTHE/FS®.

6

### Atopic Dermatitis

With respect to the indication of **Atopic Dermatitis**, in order to demonstrate therapeutic equivalence with DERMA-SMOOTHE/FS®, any generic formulation of fluocinolone acetonide topical oil must conduct studies as follows:

1.    Since DERMA-SMOOTHE/FS® includes information on the safety and efficacy of the product in children having widespread body involvement 50 –90%, any generic version of the product must conduct a study in this patient population to demonstrate the safety of the generic formulation. As noted above, the product formulation and processing can impact availability and release of the corticosteroid fluocinolone acetonide; any generic version of DERMA-SMOOTHE/FS® must demonstrate safety and effectiveness in children having widespread body involvement 50 – 90%.

Safety studies must be conducted on the particular generic formulation to study possible adrenal suppression.  Patients should have widespread body involvement 50 - 90% (average of approximately 70%) of atopic dermatitis and use a generic fluocinolone acetonide topical oil 0.01% twice daily for 4 weeks.  The Cortrosyn stimulation test and any other appropriate test of adrenal function should be performed.

2.    Comparative efficacy studies (which also include a vehicle control) must be conducted in adults and children having greater than 20% body involvement.

As noted above, Hill Dermaceuticals was required by the FDA to conduct clinical trials to demonstrate efficacy both for atopic dermatitis and psoriasis of the scalp using valid clinical endpoints.  Any manufacturer wishing to market fluocinolone acetonide should be required to demonstrate efficacy for both of these disease conditions using the same clinical endpoints and not a less rigorous test, the multiple point vasoconstrictor assay, which is not a valid surrogate marker in the specific FDA approved disease states approved in the labeling for DERMA-SMOOTHE/FS®) to establish therapeutic equivalence.

### Peanut Oil Safety Issues

**Peanut Oil Specifications.**   Hill Dermaceuticals has characterized the its specially developed, proprietary peanut oil and blend of other oils that comprise the vehicle for DERMA-SMOOTHE/FS®. In addition, the Agency required Hill Dermaceuticals to conduct a number of safety studies regarding the use of its now proprietary peanut oil in the formulation. The Agency has recently requested that Hill conduct additional safety studies in peanut sensitive pediatric patients. Hill Dermaceuticals understands that there are foreign commercial sources of peanut oil that have not undergone a refinement process to break down peanut proteins. Any manufacturer of a generic version of fluocinolone acetonide topical oil must set

appropriate limits and conduct studies to establish the safety of the specific source of peanut oil used in the generic formulation.

**Testing in Confirmed Peanut Sensitive Pediatric Patients**. Any generic formulation of fluocinolone acetonide topical oil must conduct studies to establish the safety of their specific source of peanut oil as follows:

1.  In children with severe, widespread atopic dermatitis with known peanut sensitivities – the following three tests, the Skin Prick Test, the Skin Patch Test (both of which establish peanut sensitivity) followed by 7 days of twice daily treatment of the proposed generic formulation;

2.  In children and adults (both documented to be peanut sensitive by the Skin Prick test and by the RAST test.) The generic formulation must also be patch-tested using Finn chambers.

### Safety Issue - Adrenal Suppression

As you can surely appreciate, manufacturing process parameters and formulation issues can significantly affect the topical oil formulation and have an impact on the absorption of the drug product through the skin or scalp. Thus, Hill Dermaceuticals firmly believes that generic manufacturers must also demonstrate that those specific formulations do not cause adrenal suppression in pediatric patients after widespread widespread body involvement 50 - 90% as explained above.

It is important to note that the FDA Pediatric Advisory Subcommittee recently recognized the widespread adrenal suppression potentially caused by topical corticosteroids.[3] Petitioner was the only pharmaceutical company that presented safety data to the subcommittee demonstrating that patients two years and above, showed no adrenal suppression whatsoever when administered DERMA-SMOOTHE/FS® (Eczema Oil).

### Packaging Issues

DERMA-SMOOTHE/FS® (fluocinolone acetonide), because it contains a specially designed, proprietary blend of several oils, is difficult to package. Hill Dermaceuticals has developed packaging that maintains the identity, strength, purity and potency of the Product and minimizes the possibility of leakage. Hill Dermaceuticals has two different closure systems – one for shipping and one with a spout that is dispensed to the patient so that the product can be easily applied in a thin film. Other manufacturers must ensure that their products are packaged in a manner to maintain the identity, strength, purity and potency of their product and that minimizes the possibility of leakage and that permits dosing of a thin film of the product.

---

[3]  Referring to the Pediatric Advisory Subcommittee of the Anti-infective Drug Advisory Committee Meetings that took place on October 29th and 30th in Gaithersburg, Maryland.

**Indication for Atopic Dermatitis.** Hill Dermaceuticals markets DERMA-SMOOTHE/FS® (Eczema Oil) (soon to be renamed), which is a separate package presentation for use in treating a second, separate and distinct indication, atopic dermatitis. DERMA-SMOOTHE/FS® (Eczema Oil) is not packaged with the two shower caps as is DERMA-SMOOTHE/FS® (Scalp Oil) and has distinct labeling, including patient instructions. Hill Dermaceuticals has taken such steps in the effort to avoid potential confusion in the market and to assist in the prevention of any safety issues that could arise should pediatric patients mistakenly use the product under occlusion. Hill Dermaceuticals believes that any manufacturer of a generic version of fluocinolone acetonide topical oil must also use such a dual packaging configuration in order to meet the statutory and regulatory requirements for the labeling of the generic product. *See* 21 U.S.C. §355(j)(2)(A)(i) and (v) and 21 C.F.R § 314.94(a)(4).

**Shower Caps Included in the Package with the Indication for Scalp Psoriasis.** DERMA-SMOOTHE/FS® (Scalp Oil) is the only topical corticosteroid that is FDA approved for use under occlusion in treating scalp psoriasis. It was approved as a specific treatment regimen for the treatment of scalp psoriasis and not the general indication of corticosteroid responsive dermatoses. The use of the shower cap that is packaged with the product (two are included in the box) and the corresponding labeling associated with the use of the product under occlusion distinguish DERMA-SMOOTHE/FS® from all other topical corticosteroids. The shower caps included in the box are required to be specifically labeled. Moreover, the Agency required Hill to conduct specific stability studies demonstrating the compatibility of the shower cap with the finished product. Hill Dermaceuticals believes that any manufacturer of a generic version of fluocinolone acetonide topical oil must also label and test the shower cap as Hill was required to do so.

### Assay Methodology

Hill Dermaceuticals was not permitted by chemists in the Division of Dermatologic and Dental Drug Products to use the USP assay for fluocinolone acetonide in assaying the potency of DERMA-SMOOTHE/FS®. FDA chemists were concerned that the USP assay for fluocinolone topical solution (there is no assay for fluocinolone acetonide topical oil) would not yield accurate, consistent or reproducible assay results if used in testing a topical oil formulation. Hill Dermaceuticals developed a proprietary assay method for fluocinolone acetonide in the topical oil dosage form. Companies seeking approval of a generic version of fluocinolone topical oil must develop their own an appropriate assay method for the proposed generic product.

**Such Regulatory Requirements are Necessary to Protect the Public Health**

The information and requirements set forth in this Citizen Petition are necessary to ensure that any generic version of DERMA-SMOOTHE/FS® meets appropriate approval requirements. There are significant safety issues associated with overexposure to corticosteroids, i.e., adrenal suppression. In addition, peanut sensitive individuals who are exposed to peanut protein can experience, serious, life-threatening anaphylactic reactions. The Agency must institute such appropriate regulatory requirements to ensure that all generic products meet the standards of identity, strength, quality and purity and

are therapeutically equivalent so that public confidence is maintained and the public health is protected. Hill Dermaceuticals is willing and able to compete in the marketplace as long as all companies seeking approval to market a generic version of DERMA-SMOOTHE/FS® are required to meet appropriate regulatory requirements for approval.

### C.    Environmental Impact

According to 21 C.F.R. § 25.31(a), this Citizen Petition qualifies for a categorical exemption from the requirement to submit an environmental assessment.

### D.    Economic Impact Statement

According to 21 C.F.R. § 10.30(b), Petitioner will, upon request by the Commissioner, submit economic impact information.

### E.    Certification

The undersigned certifies that, to the best of his/her knowledge and belief, this petition includes all information and views on which the petition relies, and that it includes representative data and information known to the Petitioner which are unfavorable to the Citizen Petition.

Respectfully submitted,

_____
Signature

Jerry S. Roth
President
Hill Dermaceuticals, Inc.
2650 South Mellonville Avenue
Sanford, FL  32773-9361
(407) 323-1887
(407) 649-9213  -  fax

10

Appendix "A"

## Appendix "A"

| | Protocol No. 001 | Protocol No. 22-A PS | Protocol No. 26 |
|---|---|---|---|
| Protocol No. Title | Double-blind comparative study of Derma-Smoothe/FS and its vehicle in patients with atopic dermatitis | Double-blind, comparative, parallel group study of Derma-Smoothe/FS on patients with psoriasis of the scalp. | Double-blind, comparative efficacy and safety study of Derma-Smoothe/FS on atopic dermatitis in pediatric patients |
| No. of studies | 2 independent studies | 2 independent studies, multicenter | 2 independent studies, multicenter |
| Population | 40 adult patients | 94 adult patients | 102 pediatric patients |
| Study Design | Double-blind, comparative, parallel study, active versus vehicle. Each subject is his own control. 14 days treatment. | Double-blind, comparative, parallel study, active versus vehicle. 2 treatment groups. 14 days treatment, once daily. Occlusion of treated area with plastic shower cap. | Double-blind phase, 2 weeks: active versus vehicle Open-label phase, 2 weeks: active treatment, vehicle between treatments. Twice daily treatment. Cortisol study performed. 2 weeks post-treatment interval with vehicle use only. |
| Efficacy analysis | Vehicle treated subjects showed fair to good improvement of treated sites, although not as significant as those seen with Derma-Smoothe/FS treatment (good to excellent improvement) | After 7 days, both vehicle and active groups showed statistically significant improvement from baseline. This supports the contention that the vehicle provides beneficial effects. The active group showed significant improvement over the vehicle group after 2 weeks of treatment. | Consistent findings of significant improvement of atopic dermatitis from baseline, on both vehicle and active groups. The active group showed significant improvement over the vehicle group after 2 weeks of treatment. |
| Safety analysis  Safety | No adverse events were seen on either treatment side. No exacerbations noted on the vehicle side. | The incidence of adverse event:  1 vehicle-treated subject reported burning on the hairline area. | The incidence of adverse event on double-blind phase:  3 vehicle-treated subjects reported mild to moderate papule, pustule, burning, |

| analysis | | 1 active-treated subject reported folliculitis in treated area | itching and irritation on treated areas.<br>3 active-treated subjects reported exacerbation of atopic dermatitis.<br><br>The incidence of adverse event on open-label phase:<br> 2 subjects reported mild to moderate papule, pustule, burning, itching and irritation on treated areas.<br>Another 2 subjects reported severe papule, pustule, burning, itching and irritation on treated areas. |
|---|---|---|---|
| Supplement No.<br><br>Date of submission | Original NDA submission<br><br>February 28, 1985 | Supplement No. 10<br><br>October 28, 1993 | Supplement No. 15<br><br>August 13, 1998 |

# EXHIBIT C



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Public Health Service

_____

Food and Drug Administration
Rockville MD 20857

0048   5   MAR 29  P 2:06
                MAR 24 2005

Jerry S. Roth, President
Hill Dermaceuticals, Inc.
2650 South Mellonville Avenue
Sanford, FL  32773-9361

Re:  Docket No. 2004P-0448/CP1

Dear Mr. Roth:

This letter responds to your citizen petition dated September 30, 2004, on behalf of Hill
Dermaceuticals, Inc. (Hill), asking the Food and Drug Administration (FDA) not to
approve any generic equivalent of Hill's Derma-Smoothe/FS (fluocinolone acetonide
.01 percent topical oil) (Derma-Smoothe) unless an applicant submitting an abbreviated
new drug application (ANDA) demonstrates that the generic product has the same active
ingredient, labeling, and conditions of use as Derma-Smoothe.  You also ask that an
ANDA applicant demonstrate bioequivalence to Derma-Smoothe by conducting studies
with clinical endpoints.

FDA has been unable to reach a decision on your petition because of the need to
address other Agency priorities.  This interim response is provided in accordance with
FDA regulations on citizen petitions (21 CFR 10.30(e)(2)).  We will respond to your
petition as soon as possible given the numerous demands on the Agency's resources.

Sincerely,

Jane A. Axelrad

Jane A. Axelrad
Associate Director for Policy
Center for Drug Evaluation and Research

2004P-0448                                                              LET 1

# EXHIBIT D



Innovative Dermatologicals for Children and Adults

**VIA FEDERAL EXPRESS**

Dockets Management Branch, HFA-305
Food and Drug Administration
Department of Health and Human Services
5630 Fishers Lane, Room 1061
Rockville, MD 20852

March 1, 2007

Re: Amendment to Citizen Petition – 2004P-0448

Dear Sir/Madam:

Attached is the affidavit of Ralph Harkins, Ph.D. and Howard I. Maibach, M.D. Hill Dermaceuticals, Inc. is requesting that it be docketed in the above-referenced Citizen's Petition in support of same.

Sincerely,

Jerry S. Roth
President

JSR: med

Enclosure

MAR-02-07 12:25 AM   DH PHARMA GROUP RALPH HJ   908 925 9891                    P.02

### Affidavit of Ralph Harkins, Ph.D.
### In Support of Citizen Petition, Docket 2004P-0448

This affidavit is made on my own personal knowledge and belief. I am over the age of 18 years, and otherwise *sui juris*. I testify as to the following matters based upon my own personal knowledge:

**Educational Background and Professional Experience** – I earned my doctorate degree in medical statistics and mathematical statistics with a minor in epidemiology from University of Oklahoma, OU Health Sciences Center, Oklahoma City, Oklahoma.

I have significant, relevant work experience in the field of biostatistics, including clinical trials design, development and management; statistical design and study analysis; management issues; electronic data capture implementation; and data quality. My professional pharmaceutical experience includes government service with the Food and Drug Administration as well as pharmaceutical industry experience both in-house and as an outside consultant in biostatistics and related areas.

1

WASH_1515397.1
WASH_1822236.1

MAR-02-07 12:25 AM    DH PHARMA GROUP RALPH HJ    908 925 9891                    P.03

I am the author of numerous articles on biostatistical methods and applications; a frequent speaker on biostatistical issues; and an active member of professional organizations, including the American Statistical Association, Drug Information Association, and Regulatory Affairs Professional Society.

Complete details concerning my educational and professional background are contained in the attached curriculum vitae (Attachment 1).

## AFFIDAVIT

In light of my experience in biostatistics including experience in the evaluation of dermatological products, many containing topical corticosteroids, I am providing my comments on bioequivalence issues associated with topical oils containing a corticosteroid. More specifically, I am providing comments on the requirements to establish bioequivalence for possible generic versions of Derma-Smoothe/FS® Scalp Oil and Derma-Smoothe/FS® Body Oil.

1.    Throughout my professional pharmaceutical career, I have been involved in the design and statistical analysis of safety and efficacy clinical studies. Many of these involved dermatological products, including studies used to establish the bioequivalence

2

WASH_1816397.1
WASH_1822236.1

MAR-02-07 12:26 AM   DH PHARMA GROUP  RALPH HJ   908 925 9891          P.04

of generic dermatological products to the FDA approved, reference listed brand name counterparts.

2.    From my review and evaluation of the medical literature and my experience with designing and evaluating studies conducted using dermatological products, corticosteroid drug products administered to the scalp which are intended for local effects behave differently from corticosteroid drug products administered to other areas of the body which are intended for local effects.

3.    From my review and evaluation of the medical literature plus my many discussions with medical experts in the field and experience with designing and evaluating studies conducted using dermatological products, and specifically topical corticosteroids, the vasoconstrictor assay is useful as a surrogate marker upon which to base bioequivalence determinations for certain, but not all, topical corticosteroid formulations, e.g., creams, ointments or gels..

4.    From my review and evaluation of the medical literature plus my many discussions with medical experts in the field and experience with designing and evaluating studies conducted using dermatological products, and specifically topical corticosteroids, it is neither clinically appropriate nor relevant to use the vasoconstrictor assay as a surrogate marker upon which to base bioequivalence determinations for topical

**3**

oil products, when used either on the scalp or on any other part of the body. Use of the

vasoconstrictor assay as a surrogate marker to base bioequivalence determinations for

topical oils will lead to erroneous conclusions.

5.      In my professional opinion, the scientifically valid method to establish the

bioequivalence of corticosteroids in topical oil formulations is for the ANDA or

505(b)(2) NDA applicant to conduct head-to-head equivalence studies comparing the test

products to the approved reference listed drug products when used according to the

conditions included in the approved labeling.

If the Agency has any questions or would like to further discuss my comments

and recommendations, I am available to provide additional insight. Please feel to contact

me at 732-748-3371 (phone); 908-319-2697 (cell).

I DECLARE under penalty of perjury that the foregoing is true and correct.

Executed on this _29_ day of February, 2007.

_Ralph Harkins, Ph.D._
Ralph Harkins, Ph.D.

**4**

The Affidavit of <u>Howard Ira Maibach, M.D.</u>
In Support of Citizen Petition, Docket 2004P-0448

This affidavit is made on my own personal knowledge and belief. I am over the age of 18 years, and otherwise *sui juris*. I testify as to the following matters based upon my own personal knowledge:

<u>Educational Background</u> – I earned my undergraduate and medical degrees from Tulane University. I completed a residency and fellowship at the Hospital of the University of Pennsylvania. Post-graduate positions include Assistant Instructor at The University of Pennsylvania School of Medicine, lecturer at the Graduate School of Medicine, University of Pennsylvania; Within the University of California, School of Medicine positions held have been: Assistant Professor of Dermatology, Associate Professor of Dermatology, Research Associate, Cancer Research Institute, Professor of Dermatology, Vice Chairperson of Dermatology, Chief of Occupational Dermatology Clinic. I am presently a Professor of the Department of Dermatology at The University of California.

I am the author of articles and textbooks, including <u>Topical Corticosteroids</u>.

Details concerning my educational and professional background are in the curriculum vitae and bibliography (Attachment 1).

1

## AFFIDAVIT

In light of my experience in the field of dermatology and my expertise with topical corticosteroids, I have been asked by Mr. Jerry Roth, President of Hill Dermaceuticals, Inc., to comment on bioequivalence and safety issues for your consideration, pertaining to possible generic versions of *Derma-Smoothe/FS® Scalp Oil*, approved by the Food and Drug Administration "FDA" for widespread scalp psoriasis in adults and *Derma-Smoothe/FS® Body Oil* which is FDA-approved for widespread (50% – 90% involvement) atopic dermatitis/eczema in children 2 years of age and older, and adults.

*Derma-Smoothe/FS® Scalp Oil*

1. *Derma-Smoothe/FS®* is the only corticosteroid in an oil delivery system. In corticosteroid products and other topical products, vehicles play a vital role in how the products react on and in the skin, as to clinical potency, percutaneous absorption, and tolerance. Even slight modifications of the excipients in the formulation may move a corticoid from weak to highly potent:

**Table[1]  Betamethasone valerate**

| Corticosteroid Class | Potency | Tradename |
|---|---|---|
| Class 2 Potent | 0.1% | Betnovate |
| Class 3 Upper mid-strength | 0.1% | Betatrex<br>Valisone 0.1%, O |
| Class 5 Lower mid-strength | 0.1% | Betatrex<br>Valisone C,L |
| Class 6 Mild | 0.1% | Valisone 0.1% C |

2. Most topical corticosteroids that the office of Generic Drugs reviews have been approved for the general indication of *corticosteroid responsive dermatoses*. The bioequivalence of these products are based upon a surrogate marker, skin blanching (vasoconstrictor study), which is performed on normal skin, usually the forearm.

3. *Derma-Smoothe/FS® Scalp Oil* was approved for scalp psoriasis, with the use of occlusion with a shower cap. Reference is made to the supplemental application S-010 to NDA 19-452 for the indication of scalp psoriasis, approval date Feb 16, 1995 (Attachment A), and S-016/NDA 19-452 for indication specific labeling, approval date Nov 17, 2005 (Attachment B). The scalp differs significantly from the forearm, back or other body parts; the scalp is far more vascular and diseases do not present themselves the same way on the scalp as elsewhere. To my knowledge, vasoconstrictor assays have not been conducted on the scalp. Moreover, potential safety issues cannot be validated by vasoconstrictor studies.

---

[1] Jacob SE, Steele T. Corticosteroid classes: A quick reference guide including patch test substances and reactivity. J Am Acad Dermatol 2006;54:723-7.

2

This is a vital issue that should be addressed by the Agency. When the blood level system is not applicable, the clinical end point becomes the true marker of bioequivalence.

4.  The formula for the *Derma-Smoothe/FS®* is precise. Even a slight variation in the formulation, despite meeting generic regulatory requirements, [Code of Federal Regulations, Title 21, Section 314.94 (9) (v)] may create highly, clinically relevant safety issues (contact urticaria syndrome), especially when used with occlusion. Variances in the vehicle's composition, if more occlusive, could produce folliculitis. Therefore, the sponsor for a generic equivalent should provide documentation that the generic product is not only '*not inferior*' but also '*equal to*' in efficacy and safety to the brand name drug through well-controlled clinical trials.

    The proprietary formulation of Derma-Smoothe/FS contains a specific quality of a specific surfactant (detergent). Because this surfactant can significantly affect the stability of the active ingredient fluocinolone acetonide, very tight controls and testing requirements are conducted on each manufactured batch of the finished product to ensure that the stability of fluocinolone acetonide is maintained throughout the product's shelf life.

    Note that the analytical assay test for fluocinolone acetonide in the finished product is a proprietary method developed by Hill. The proprietary method was developed because the Agency (Dermatology Division) did not accept the validity of the (USP) compendial method originally applied to test this product.

5.  Derma-Smoothe/FS® was approved for the indication of scalp psoriasis based on well-controlled phase 3 clinical studies that involved treatment of the whole scalp and occlusion with a shower cap for a minimum of 4 hours. This unique approval included the drug product packaging assembly that included the shower cap. [S-010 to NDA 19-452 for the indication of scalp psoriasis, approval date Feb 16, 1995 (Attachment A), and S-016/NDA 19-452 for indication specific labeling, (approval date Nov 17, 2005 Attachment B)] There is no other topical corticosteroid product that is marketed with a shower cap, as part of the packaged finished product.

*Derma-Smoothe/FS® (Body Oil)*

6.  *Derma-Smoothe/FS® (Body Oil)* fluocinolone acetonide, 0.01% is approved for children and adults for the specific indication *widespread atopic dermatitis/eczema > 50% - 90% body involvement*. Clinical trials (Phase 4 safety studies) to assess the potential of Derma-Smoothe/FS to suppress the Hypothalamic-Pituitary-Adrenal (HPA) axis in pediatric patients with severe to moderate atopic dermatitis, (sNDA

3

03/01/2007  10:30   4156733533              MAIBACH                        PAGE  05/07
Mar 01 07 12.41p   Hill Dermaceuticals                  4076499213         p 4

017, approval date Oct 10, 2001, Attachment C) document that Derma-Smoothe/FS Body Oil appears, as **none of the patients in the study experienced adrenal suppression.** This favorable feature of the drug is attributed to the vehicle and formulation, so that maximum benefit is derived, such as the ability of this vehicle to cover a larger surface area with a lesser amount of drug, its ability to hydrate and enhance penetration of the active component, and the stability of the molecule in the vehicle, among others[1]

7.  The safety data was presented to the FDA's Pediatric Advisory Committee,[3][4] showing that Derma-Smoothe/FS Body Oil is the only topical corticosteroid product to prove systemic safety, demonstrating that the adrenal function is not compromised when treating >50% - 90% of the body in children as young as 2 years, with moderate to severe atopic dermatitis. **To my knowledge, Derma-Smoothe/FS® (Body Oil) is the only "modern" corticoid product to be proven free of adrenal suppression when treating such large surface areas.**

8.  I have been informed by Hill that additional adrenal suppression studies on patients as young as 3 months of age have been conducted by the Sponsor (from April 2005 to Nov 2006) and submitted to the Agency. (Supplemental Application filed February 12, 2007). It is my further understanding that no adrenal suppression appeared in that patient population either.

Thus, the percutaneous penetration available from Hill's FDA-approved product results from the amount of corticoid delivered to the skin and relates not only to the proprietary oil's characteristics but to the proprietary detergent.

9.  As stated earlier, even a slight modification of the excipients in the formulation may move a corticosteroid from weak to highly potent. This should be considered when reviewing a generic version of the brand name drug, Derma-Smoothe/FS® Body Oil, as even a slight variance in the vehicle's composition may significantly affect the action of the corticoid in the body, and result in adrenal suppression in patients. **(Table; Topical Corticosteroids[5])** Therefore, the sponsor for a generic equivalent should provide proof that the generic product is not only '*not inferior*' but also "*equal to*' in efficacy and safety to the brand name drug through well-controlled clinical trials.

## Refined Peanut Oil

[1]Brazzini, B; Pimpinelli, N, New and Established Topical Corticosteroids in Dermatology, Am J Clin Dermatol 2002;3 (1):47-58

[3] Pediatric Advisory Subcommittee of the Anti-Infective Drugs Advisory Committee Meeting on October 29, 2003 in Gaithersburg, Maryland and the March Joint Session with the Non-Prescription and Dermatolic Drugs Advisory Committee

[4] March 24, 2005 Joint Dermatologic & Ophthalmic Drug and Non-Prescription Drug Advisory Committee Meeting

[5] Maibach ed, Topical Corticosteroids.

4

10. Note that the Agency's Dermatologic Division has continually expressed to Hill Dermaceuticals (Attachment D) concern over peanut allergy since this product contains peanut oil. Two studies were conducted and submitted to the Agency for Derma-Smoothe/FS® in known peanut-sensitive individuals, using prick and patch tests. Results of both studies showed no reaction to prick or patch testing (peanut allergy studies). [Reports filed with FDA on May 21, 1999, February, 1999 and March, 1999). Any proposed generic product should demonstrate for their formulation the absence of peanut reaction in peanut-sensitive patients.

11. It is also important to consider the quality of the ingredients in the vehicle, i.e. the Hill proprietary refined peanut oil. As previously stated, the source, refining process, and even the quality control of peanut oil cannot be assumed to be exact from one manufacturer to the next. The qualitative evaluation of this ingredient must be the same as the reference product.

12. In (June 1999) Hill implemented an analytical test, S-ELISA, for refined peanut oil, to verify that no protein is detected at 2.5 ppm (parts per million) level. However, the literature and experts suggest the importance of testing to even lower levels. Although not part of an official compendium for refined peanut oil testing, in 2007, Hill will implement a newer, more sensitive, analytical test for peanut protein content detection to as low as 1 part per million (microgram per gram). This validated method of testing and proprietary preparation will be the standard testing at Hill as of (March 2007) on every batch of refined peanut oil and will be so stated in its labeling. This is a proprietary technology.

13. The source of this highly-refined peanut oil is proprietary and not released for other manufacturers' use. To the best of my knowledge, this information is proprietary between Hill and the Agency's Division of Dental and Ophthalmic Drugs.

In conclusion, for these reasons, a generic product should have exactly the same qualitative and quantitative formulation as *Derma-Smoothe/FS®* because this FDA-approved formula has been demonstrated through adequate and well-controlled clinical studies not to cause adrenal suppression or immunologic contact urticaria, when used over as much as 90% body surface area in pediatric patients 3 months and older. Potential safety issues cannot be validated by vasoconstrictor studies. This is a vital issue that should be addressed by the Agency.

If there are any questions, I would be pleased to attempt to answer them.

5

03/01/2007  10:30    4156733533              MAIBACH                              PAGE  07/07
Mar 01 07 12:41p    Hill Dermaceuticals                      4076499213              p.6

I DECLARE under penalty of perjury that the foregoing is true and correct.
Executed on this ___[ st___ day of March, 2007.


Howard Ira Maibach, M.D.

6

## HOWARD I. MAIBACH, M.D. ATTACHMENT INDEX

**Tab Identifier**

Attachment 1: Curriculum Vitae and Bibliography of
      Howard I. Maibach, M.D.                              Attachment 1

Attachment A: Supplemental Application S-010 to NDA 19-452
      for the Indication of Scalp Psoriasis (Feb. 16, 1995)    Attachment A

Attachment B    Supplemental Application S-016 to NDA 19-452
      for Indication Specific Labeling (Nov. 17, 2005)    Attachment B

Attachment C: Supplemental Application S-017 to NDA 19-452
      for the Indication of Pediatric Patients 2 Years and
      Older (Oct. 10, 2001)                    Attachment C

Attachment D: Peanut Allergy Articles           Attachment D

Affidavit Reference 1: Reference to Maibach Affidavit Point 4    Point 4 Reference

Affidavit Reference 2: Reference of Footnote 1 of Maibach Affidavit:
      Jacob SE, Steele T. Corticosteroid classes: A quick
      reference guide including patch test substances and
      reactivity. J Am Acad Dermatol 2006;54:723-7.    Reference to Footnote 1

Affidavit Reference 3: Reference to Footnote 2 of Maibach Affidavit:
      Brazzini B, Pimpinelli N. New and established
      topical corticosteroids in dermatology. Am J Clin
      Dermatol 2002;3(1):47-58.            Reference to Footnote 2

07-552
C
RCL

**CIVIL COVER SHEET**

JS-44
*(Rev.1/05 DC)

RECEIVED

**I (a) PLAINTIFFS**

HILL DERMACEUTICALS, INC.
2650 S. Mellonville Ave.
Sanford, FL 32773-9311

**DEFENDANTS**

ANDREW C. VON ESCHENBACH, M.D.,
in His Official Capacity as Commissioner of the
U.S. Food and Drug Administration
5600 Fishers Lane
Rockville, Maryland 20857

U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 MAR 16 PM 5: 59

MAYER-WHITTINGTON

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
**(EXCEPT IN U.S. PLAINTIFF CASES)**

88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Simon E. Dance (D.C. Bar No. 436432)
David L. Rosen (D.C. Bar No. 438634)
FOLEY & LARDNER, LLP
3000 K Street, N.W., Suite 500
Washington, DC 20007-5101
Tel: (202) 672-5430
Fax: (202) 672-5399

ATTORNEYS (IF KNOWN)

Case: 1:07-cv-00552
Assigned To : Lamberth, Royce C.
Assign. Date : 3/16/2007
Description: HILL DERM v. USDA

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

O 1 U.S. Government Plaintiff

O 3 Federal Question
(U.S. Government Not a Party)

◉ 2 U.S. Government Defendant

O 4 Diversity
(Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

O **A. Antitrust**

☐ 410 Antitrust

O **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

◉ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

O **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

O **E. General Civil (Other)**     OR     O **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** <br> ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** <br> (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** <br> ☐ **890 Other Statutory Actions** <br> (if Privacy Act) <br><br><br> *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans** <br> (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** <br> ☐ **720 Labor/Mgmt. Relations** <br> ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** <br> ☐ **740 Labor Railway Act** <br> ☐ **790 Other Labor Litigation** <br> ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** <br> ☐ **443 Housing/Accommodations** <br> ☐ **444 Welfare** <br> ☐ **440 Other Civil Rights** <br> ☐ **445 American w/Disabilities- Employment** <br> ☐ **446 Americans w/Disabilities- Other** | ☐ **110 Insurance** <br> ☐ **120 Marine** <br> ☐ **130 Miller Act** <br> ☐ **140 Negotiable Instrument** <br> ☐ **150 Recovery of Overpayment & Enforcement of Judgment** <br> ☐ **153 Recovery of Overpayment of Veteran's Benefits** <br> ☐ **160 Stockholder's Suits** <br> ☐ **190 Other Contracts** <br> ☐ **195 Contract Product Liability** <br> ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting** <br> (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Court from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

21 C.F.R. §10.30(e)(1). FDA's failure to act on HDI's Citizen Petition within 180 days is unreasonably delayed and a violation of due process.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  ☐  **DEMAND $** [_____]  Check YES only if demanded in complaint  **JURY DEMAND:**  YES ☐  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☐  If yes, please complete related case form.

**DATE** 3/16/2007  **SIGNATURE OF ATTORNEY OF RECORD**  [signature]  JTC

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.