# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HILL DERMACEUTICALS, INC.,<br>a Florida corporation,<br><br>    Plaintiff,<br><br>v.<br><br>U.S. FOOD AND DRUG<br>ADMINISTRATION,<br><br>    And<br><br>ANDREW C. VON ESCHENBACH, MD.,<br>*In His Official Capacity as Commissioner*<br>*of the United States Food And*<br>*Drug Administration,*<br><br>    Defendants. | CASE NO.1:07-cv-0552 |

## PLAINTIFF, HILL DERMACEUTICALS, INC.'S, REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO STAY

The Plaintiff, HILL DERMACEUTICALS, INC. ("HDI"), by and through its undersigned counsel, hereby files this Reply to Defendants' Opposition to the Motion to Stay (Dkt. 10). This Reply is being filed pursuant to L.C.v.R. 7(d).

This Motion to Stay (Doc. 4) filed by HDI is very simply based. The underlying action filed by HDI against the Defendants is one for Mandamus and Injunctive Relief. The FDA's position is that they decide Citizen's Petitions relating to generic drugs at the same time as the

ANDA is approved. By doing so they deprive a party's administrative rights to challenge FDA's decision with respect to the petition.

HDI requests an equitable Stay of any FDA action on an ANDA until that Agency fulfills its regulatory and statutory duties on the long delayed and obviously ignored HDI's Citizen's Petition.

## Introduction

HDI, in compliance with the U.S. FOOD AND DRUG ADMINISTRATION's ("FDA") regulations, on September 30, 2004 filed a Citizen's Petition to require a bioequivalence trial with clinical end points before approving any Abbreviated and New Drug Application ("ANDA") which references HDI's *Derma-Smoothe/FS® (fluocinolone acetonide) (Scalp Oil)* or *Derma-Smoothe/FS® (fluocinolone acetonide) (Body Oil)* products. On December 13, 2005 HDI filed an amendment to its Citizen's Petition. Agency action on the merits of HDI's Citizen's Petition has been unreasonably denied for over 31 months, more than 950 days. Pursuant to 21 C.F.R. § 10.30(e)(2) the "Commissioner shall furnish a response to each petitioner within 180 days of receipt of the petition". (emphasis added)

Under the Administrative Procedure Act ("APA"), and this Court's inherent powers in equity, HDI is equitably entitled to a preservation of the Status Quo to prevent FDA approval of any pending ANDA referencing HDI's *Derma-Smoothe/FS® (fluocinolone acetonide) (Scalp Oil)* or *Derma-Smoothe/FS® (fluocinolone acetonide) (Body Oil)* products prior to this Court's review and decision on the Mandamus action (Doc. 1), and until FDA provides a substantive satisfactory response to the HDI Citizen's Petition. The Federal Court's authority under 5 U.S.C. § 706(1) (APA) extends to remedying the FDA's disregard and non-response in violation of their

- 2 -

own Regulations.  Taking five (5) times the regulatory limit to substantively answer, and yet claiming the FDA had satisfactorily responded within 175 days is not supported by the Record. The Court must determine whether the inadequate response (effectively no response) provided by the FDA of "not enough resources" is a satisfactory explanation.  HDI contends it is not.

### Authority for Court Action

The Federal Court's authority under the APA provision of 5 U.S.C. § 706(1) to compel FDA action unlawfully withheld, or unreasonably delayed, extends to remedying the agency's refusal to take action which it is required to do by statute and/or regulation.  In the instant case, the requirement by law is an *adequate* response substantively within 180 days to HDI's Citizen's Petition. Nowhere has this been done.  The FDA's response to a Citizen's Petition must be "sufficient to conclude that the agency's action was the product of reasoned decision making". See *Motor Vehicles Mfrs. Assoc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 52 (1983) (The agency must cogently explain its reasoning.)  The FDA's Memorandum in Opposition to a Stay (Dkt. 10) alleges a stock platitude, form uncorroborated bureaucratic answer of, "not enough resources". This is contrary to the courts' judicial interpretations of what is an adequate answer. *State Farm,* 463 U.S. at 43.  Since an *adequate* explanation has not been provided to HDI's Citizen Petition, this Court has equitable power to compel FDA action when that agency has unlawfully withheld, or unreasonably delayed and ignored, a decision it has to make by law. See 5 U.S.C. § 706(1).

### Reply Argument to FDA

The FDA's Opposition Memorandum maintains that "reasonable time" cannot be decided in the abstract by referencing "some number of months or years" beyond which an agency or

- 3 -

action is presumed to be unlawful. This argument, however, has been already overruled by courts to the contrary, simply by applying common sense. It has been held that 1,000 days on a regulation requiring an adequate answer in 180 days is unreasonable. *Sandoz, Inc. v. Leavitt,* 427 F. Supp. 2d 29, 37 (D.D.C. 2006). Factors usually relevant to such an inquiry of unreasonableness include any 1) statutory timetable, 2) an indication of the speed in which Congress expected an agency to proceed, 3) the actual extent of the interests prejudiced by the delay, 4) particular concerns for matters of human health and welfare, 5) and/or the effect of expediting the delayed actions on the agencies' activities. See *Mashpee Wampanoag Tribal Council, Inc. v. Norton,* 357 U.S. App. D.C. 422, 366 F.3d 1094, 1098 (D.C. Cir. 2003).

The amount of time federal bureaucratic agencies take to make substantive decisions must be governed by a rule of reason which is applied by the courts. This Court need not find any ill motivation or impropriety in the FDA's non-actions to hold that agency accountable for its lack of action. This is because the APA entitles "a person suffering legal wrong because of an agency action, or adversely affected or aggrieved by an agency action...to a judicial review thereof ". 5 U.S.C. § 702. Under the APA a reviewing court must remedy an agency action that is not in accordance with the law. See <u>Tourus Records, Inc. V. DEA,</u> 347 U.S. App. D.C. 262, 259 F. 3d 731, 736 (D.D.C. 2001).

This District Court has historically granted Motions to Stay when pending FDA decisions would otherwise render the judicial decision otherwise moot by an interim executive branch's regulatory agency. This prevents denial of Plaintiff's rights to seek judicial redress, access to the Courts, and otherwise a maintenance of separation of powers. <u>See, e.g.,</u> *Mylan Laboratories, Inc., v. Leavitt,* 2007 U.S. Dist. Lexis 31170 *11 (D.D.C. 2007) (U.S. Court of Appeals for the

Federal Circuit <u>granted</u> Mylan's Motion to Stay.  Further proceedings would have been rendered

moot had the Motion to Stay not been granted.);   *Hess & Clark, Div. of Rodia, Inc. v. FDA*, 161

U.S. App. D.C. 395, 495 F. 2d 975, 978 (D.C. Cir. 1974) (The Court granted a Stay conditioned

upon pending submission by petitioners to the FDA of material delineating the issues to be

raised.);   *Novartis Corp. v. Dr. Reddy's Laboratories, Ltd.*, 2004 U.S. Dist. Lexis 21094, *1

(S.D.N.Y. 2004) (The FDA's decision would moot the case for the court.  The judicial branch

therefore found that a Stay of proceedings pending the completion of the FDA's evaluation

would satisfy equitable treatment, and promote judicial efficiency and economy.);   *Capital

Bridge Co., Ltd. v. IVL Technologies, Ltd., Mem Corp., Inc. and Craig Electronics, Inc.*, 2006

U.S. Dist. Lexis 62801 (S.D.N.Y. 2006), <u>citing</u> *Novartis Corp. v. Dr. Reddy's Laboratories, Ltd.*,

2004 U.S. Dist. Lexis 21094, *3 (S.D.N.Y. 2004) (The court granted the defendants' motion to

Stay the proceedings pending the determination of whether the accused product infringed the

plaintiff's patent or satisfied the standards for a generic drug that would not infringe.);   *Bausch &

Lomb, Inc. v. Alcon Labs, Inc.*, 914 F. Supp. 951, 952 (W.D.N.Y. 1996) (The court stated that

this was an infringement action because the purpose of the proceeding was to determine the

validity of the case as a whole.)

## 1. <u>The FDA Position</u>

The FDA in its opposition memorandum alleges that in deciding whether to grant relief

requested by HDI the Court <u>must</u> only consider injunctive principles: (1) whether there is a

substantial likelihood that the Plaintiff will succeed on the merits of the case, (2) whether

Plaintiff will suffer irreparable injury absent an injunction, (3) the harm to Defendants or

interested parties, and (4) whether an injunction is in the public interest or not adverse to the

public interest. For the most part, FDA's analysis totally misses the mark. HDI's Motion to Stay

was broader than injunctive principles—it also sought an Equitable Stay to keep the Status Quo

until this Court could rule on the merits of the Mandamus action (Doc. 1). Even if the Court

only looks at the injunction argument, the agency is otherwise trying to subvert a Congressional

mandate. Despite FDA's arguments, even injunctive factors must be viewed as a continuum,

with more of one factor compensating for less of another. If the arguments for one factor are

particularly strong, an injunction may issue even the arguments in other areas are weak. See

*Bracco Diagnostics, Inc. v. Shalala,* 963 F. Supp. 20, 26 (D.D.C. 1997). The necessary degree

of likelihood of success that has to be shown will vary according to the Court's assessment of all

the overall factors. An injunction, therefore, may be issued with either a high probability of

success, or with some injury, or vice versa, or when the public interest only is held high in

esteem.

However, the true decision requested by HDI is one for equitable stay. In deciding

whether to grant an equitable Stay this Court must only consider whether there is a substantial

likelihood that possible FDA action in the interim would render further Court action moot. *Sea*

*Containers, Ltd. v. Stena AB,* 890 F.2d 1205, 1207 (D.C. Cir. 1989). Even though the original

filing of HDI's Motion to Stay (Doc. 4) included a prayer for injunctive relief and a temporary

restraining order, the argument alternatively also sought an *Equitable Stay.* An equitable stay is

within the inherent power of this Court at common-law and which does not require any of the

above basic elements of injunctive relief be satisfied which FDA spends all their time arguing in

its Opposition Memorandum. The FDA placed all their eggs in the injunction basket. Even so,

the FDA completely failed to rebut the uncontroverted Affidavit from Dr. Maibach which

- 6 -

provided HDI with its unobstructed likelihood of success on the injunctive merits. <u>See</u> *Employers Insurance of Wausau v. Shell Oil Company*, 820 F. 2d 898, 900 (7th Cir. 1987) (While the Enelow-Ettelson Doctrine holds that a grant or denial of a stay in an *action at law* is the granting or denial of a preliminary injunction, the courts differentiate an *equitable action*). When the underlying relief sought is equitable, historically such a case has been before a chancellor whose action would have been more like a control order than an injunction. *Id.* at 900. It is into these shoes this Court steps to grant HDI's alternative request for Equitable Stay.

## 2. <u>Equitable Stay vs. Injunction</u>

A discussion distinguishing between an Equitable Stay, an injunction or a temporary restraining order's relief is necessary at this time. While granting an injunction or a temporary restraining order to a federal agency would be "extraordinary relief", it is well within the Court's discretion to grant an <u>equitable</u> Motion to Stay simply as a preservation of the <u>status quo</u>. Such an action requires only "ordinary relief", unlike injunctions. It is in the inherent power of this Court to do so, especially in matters that implicate the public interests such as health, safety and welfare. <u>See</u> *Virginia Petroleum Jobbers Assoc. v. Federal Power Commonwealth*, 259 F.2d 921, 925 (D.C. Cir. 1958). As it is principally the protection of public health and safety interests, and the protection of HDI's rights to have access to the courthouse, this is about what the Court should be concerned. No artificial restrictions to its judicial power in granting an equitable stay in the furtherance of these interests should be condoned from the FDA. *Conservation Council of N.C. v. Costanzo*, 505 F.2d 498, 502 (4th Cir. 1974) (decision to grant preliminary decision to grant stay affecting agency proceedings is discretionary with the district judge.) The FDA statement that there are four factors for an injunction that the Court <u>must</u> examine simply does

not apply to HDI's alternative request for an Equitable Stay, an issue totally ignored and not addressed by the Agency in its Opposition papers. See *Virginia Petroleum*, 259 F.2d at 925.

### The Merits of HDI's Motion to Stay

The FDA's regulations require the agency to respond to a Citizen's Petition within 180 days of its receipt. 21 C.F.R. § 10.30(e). In the instant case it has been over 950 days since the original Citizen's Petition has been docketed. In other instances, Congress's mandate for 180 day action requirement provides a strong indication that a 1,000 day response time was unreasonable. *Sandoz v. Leavitt*, 427 F. Supp. 2d 29, 32 (D.D.C. 2006) (This Court held that the nearly 1,000 day delay in otherwise complying with statutory law was egregious.) Forcing HDI to wait almost 950 days (only 50 days short of 1,000 days already found unreasonable) to have its Citizen's Petition reviewed and substantively acted on is egregious behavior, according to this Court's already established statutorily interpreted and equitable principles.

HDI filed a Citizen's Petition requesting the FDA regulate all topical corticosteroid products using the same safety criteria. HDI argued that the FDA's review of generic ANDA's must include bioequivalence studies utilizing clinical end points to ensure the safety of the public. FDA's current practice of using vasoconstrictive assays to establish bioequivalence conducted on the forearm bear little if no resemblance to the permeability of the scalp and absorption issues raised by the scalp or bioequivalence based on clinical end points. The FDA completely failed to address the scientific evidence presented in HDI's Motion to Stay. The best they could do was an Affidavit from its lawyer, Jane Axelrad, saying resources are limited. Does one think that a small privately held family company like HDI, when compared to the vast bureaucratic web of the Executive Branch and the FDA, has unlimited resources? Of course not.

Yet HDI provided scientific data to this Court to support its factual and legal arguments. The best the FDA could do was a lawyer Affidavit that misses the mark anyway. Therefore, the use of vaso-constrictive assays as a test for bioequivalence of using topical corticosteroids on the scalp would be adverse to the public health and safety, as HDI's unrebutted evidence demonstrates, and provides the basis for the Court to enter its Stay.

Because of this action by the FDA the Court must grant HDI its Motion to Stay. The public interests of health and safety would be better served by a granting of the Motion to Stay to preserve the Status Quo pending a substantive decision by the FDA as to how to treat the safety issues of all topical corticosteroids, to provide a rational explanation for the different treatments of the products at issue, and make the FDA confront the unrebutted scientific evidence submitted by HDI in the Citizen's Petition.

The FDA's Opposition maintains that consistent with agency regulation it is required to approve a Citizen's Petition, deny it, or provide a tentative response within 180 days of receiving the petition. 21 C.F.R. § 10.30(e)(2). However, the Courts have held that even a tentative attempt to satisfy 21 C.F.R. § 10.30(e)(2)'s requirement must be a substantively adequate, or provide a satisfactory response. Therefore, the FDA is required to explain their position more fully than a standard form letter that they used here, and how they reply to almost all filings. See *Alpharma, Inc. v. Leavitt,* 460 F.3d 1, 6 (D.D.C. 2006) (the standard requires an agency to "examine the relevant data and articulate a satisfactory explanation"); *Motor Vehicle Manufacturers Assoc. v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 49 (The agency must cogently explain why it has exercised its discretion in a given manner and the explanation must be sufficient to enable us to conclude that the agency's action was the product of reasonable

decision making). The answer because "of the need to address other agency priorities" renders FDA's response as no response at all, or inadequate at worst. Yet, the FDA continues to make no attempt to cogently explain, even to this Court, why HDI's Citizen's Petition which regulatory should be granted, denied or substantively answered within 180 days, and which involves public health and safety issues has languished in its catacombs of the bureaucracy for over 950 days without any action, or substantive explanation. While this is not a final agency decision requiring formal responses, the courts have basically held that when a government agency is involved, the citizens of the United States who file Petitions are entitled to a cogent, well thought-out, explanation. See *Alpharma, Inc.*, 460 F.3d at 6.

The disparity in the review procedures between the topical corticosteroid of HDI and its generic competitors with improper bioequivalence testing would create a clear problem of public health and safety. Even FDA's own counsel, when citing the case of *Norton v. Utah Wilderness*, acknowledged that the agency must provide a satisfactory answer within 180 days. This cited case points out that a satisfactory answer is not a pass the buck response, but an actual substantive explanation addressing and analyzing the scientific evidence.

The initial Petition by HDI was accompanied by Dr. Howard Maibach's Affidavit, the leading authority in Dermatology. Dr. Maibach addressed the need for bioequivalence testing using clinical end points to secure the public's health safety in the use of topical corticosteroids. The Declarations HDI has filed as exhibits demonstrate to the Court's satisfaction that the considered medical opinions of the leading experts in the field of dermatology are representative of the co-extensive interests of the public health and safety, and the HDI Petition. On this point the FDA offered absolutely no counter-declarations, or substantive arguments in response against

an Equitable Stay, or even to an injunction. The two generalities offered by Jane Axelrad in her Affidavit did not go to any points of merit to Dr. Maibach's Affidavit. Jane Axelrad's (a lawyer) Affidavit submitted by the FDA can in no way persuade this Court that any action is being taken that would be satisfactory to the public interests in health and safety, to that of HDI, or in compliance with the Agency's statutory and regulatory obligations. In fact, the action Axelrad proposes taking "of approving or denying the Citizen's Petition at the same time a generic ANDA would be granted" makes HDI's Citizen's Petition, as well as everyone else's meaningless and denies effective access to the Courts, and otherwise would make all judicial proceedings moot.

The FDA has maintained that an irreparable harm must be established for HDI's Motion to Stay to be granted. The irreparable harm served here would be to make any further judicial redress moot. This would completely compromise HDI's constitutional right to access to the Court. Without access to the Court the substantive issues involved would not be able to be determined, creating irreparable injury to HDI. The fact that a generic product has not yet been approved is not the issue. The critical point is whether the FDA can, without accountability, violate and ignore delegated authority Congress has imposed on it. This is evidenced by the agency's further reply that it might grant or deny HDI's Citizen's Petition prior to taking such action, or at the latest at the same time as issuing such approval. This is not what Congress intended. *Sandoz,* 427 F. Supp. 2d at 37. Certainly not after 950 days of waiting. This is not an equitable situation, but an example of arbitrary and capricious agency action and conduct.

FDA cites in their memorandum Hatch-Waxman Amendments created in § 505(j) of the FDCA, codified as 21 U.S.C. § 355(j), in an effort to increase the availability of lower cost

generic versions of approved drug products while at the same time encouraging developments of new drugs. However, this misleads this Court as to the intent of Congress. The Hatch-Waxman Amendments under 21 U.S.C. § 355(j) require a generic drug producer to use the same labeling as was approved by the FDA for, and is used by the producer of a pioneer drug. *Smith Kline Beecham Consumer Health Care v. Watson Pharmaceuticals, Inc.*, 211 F.3d 21, 22 (2nd Cir.) (Labeling must remain the same if an ANDA is to be used). The purpose of this requirement is that lower cost generic pharmaceuticals can enter the market, although they must be bioequivalent and therapeutically equivalent to the pioneer drug, here HDI's *Derma-Smoothe/FS* products. This is to ensure public safety and efficacy in the product.

Hence, a generic must satisfy the same complexities of using a peanut oil vehicle refined to an almost undetectable level by HDI that it does not trigger peanut related allergies in the general population which creates a predictability of absorption on the scalp and the body. Use of these *Derma-Smoothe* products on large areas of the scalp or over 50% of the body, and the safety they produce in pediatrics in over 50% of the body without creating adrenal suppression must be satisfied and proven by a generic. The long term use, with shower cap as occlusion (the only of its kind) is all part of the recommended labeling of these products. Therefore, to carve out exceptions to the labeling or to create generic products requiring only part of the labeling would be in violation of FDA law and Hatch-Waxman Amendments. 21 U.S.C. § 355.

The requirement that a generic must have the same labeling as the pioneer drug incorporates several additional requirements, one of which is relevant to use in this case. First, FDA requires the labels to contain the pioneer drug's exact dosage form. 21 C.F.R. § 201.57(a)(1). Therefore, the same label requirement incorporates the necessity the generic drug

share the pioneer drug's dosage form.    The rule mandating the label inclusion is necessary to assure bioequivalence and therapeutic equivalence of the generic product to the pioneer drug. The bioequivalence requirement acts as a market entry restriction to ensure the generic drugs will be as safe and effective as the pioneer drugs they reference.  *Bristol Myers Squibb Co. v. Shalala,* 923 F.Supp. 212, 216 (D.D.C. 1996), citing *Schering Corp. v. FDA,* 51 F.3d 390, 396 (3d Cir. 1995).

This is what, among other things, HDI's Citizen's Petition presented to the agency.  The FDA argues that if an ANDA fails to satisfy any of the requirements in 21 U.S.C. § 355(j)(2), it will not be approved.    Therefore, it is to be considered a bioequivalent to the referenced drug listed if the rate and extent of absorption of that drug do not show a significant difference from the rate and extent of the absorption of the pioneer drug listed when administered at the same dose of the therapeutic ingredient. 21 U.S.C. § 355(j)(8)(B)(i).

This is exactly the reason why HDI filed its Citizen's Petition to make sure the FDA understood the unique challenges presented by *Derma-Smoothe's* peanut oil formulations.  This was necessary to ensure that generic off the shelf copycats referencing the *Derma-Smoothe* products using another non-proprietary source of peanut oil would have to demonstrate that their product meets these strict specifications to ensure that peanut protein in sufficient dosages are not present in the generic product, or present in quantities which would raise public health safety concerns for peanut allergic individuals.  The unrebutted testimonial Affidavit of Howard I. Maibach, M.D., excerpts from advisory committee meetings, transcripts and other information, make it clear that these issues are critical to establishing pharmaceutical equivalence and bioequivalence with respect to any generic version referencing HDI's proprietary *Derma-*

*Smoothe* drugs which is necessary to insure the public safety.    All of this has been ignored by the FDA.

The FDA alleges that absent from HDI's Motion to Stay is a discussion of *Biovail Corp. v. FDA*, 448 F.Supp. 2d 154 (D.D.C. 2006) claiming that it rejected the very argument that HDI advances here.    In that case they allege Biovail, also a pioneer drug manufacturer, filed a Citizen's Petition seeking to ensure that the FDA apply the proper standards in determining whether generic drugs pending FDA approval are bioequivalent to that of Wellbutrin XL, the drug in question at the time.    The drug company also sought emergency injunctive relief after FDA failed to respond substantively to a Citizen's Petition within 180 days.    However, what the FDA fails to differentiate *sub judice* from the *Biovail Corp.* case is that there it was an extended release tablet formulation versus a generic extended release tablet formulation.    Therefore, the delivery mechanism was exactly the same.    Hence, bioequivalence could be established by other standards (i.e., plasma levels) than clinical end points.

In topical dermatological products like those of HDI where the vehicle (here the referred peanut oil which moistens the skin to allow the active ingredient to work) is so important to the delivery, safety and efficacy of the drug that it is necessary to establish bioequivalence using clinical end points.    The FDA in failing to make the comparison improperly cites *Biovail* as a precedent case here, but in fact one which is irrelevant.    The FDA ignores the difference in situations from an extended release tablet formulation to another extended release tablet formulation versus a peanut oil delivery system with a .01% topical corticosteroid versus a drug referencing the *Derma-Smoothe/FS* products in its ANDA, which cannot guarantee that it would be the same as the proprietary formulation of *Derma-Smoothe*.

## **Conclusion**

It is then before this Court to evaluate the claim of unreasonable delay and keep the FDA from pulling out the rug from underneath the Mandamus Petition by ignoring HDI's Citizen's Petition, and then deciding an ANDA without the supporting evidence all the while ignoring its legal obligations to HDI.   The FDA has contended and cites *Mashpee Wampanoag Tribal Council, Inc. v. Norton,* 336 F.3d 1094, 1100 (D.C. Cir. 2003) as providing the four factors the Court should use in deciding an unreasonable length of time.   The four factors here, as the judges point out in that case, are factors of reasonableness.   It is basically up to the Court's discretion as to what they consider reasonable.   We do know this Court has stated that 1,000 days is an unreasonable amount of time when the regulation reads 180 days.   *Sandoz,* 427 F. Supp. 2d at 37.   This further differentiates it from the FDA reliance on *Biovail:*

> Neither does the plaintiff allege that the generic drug awaiting FDA approval contains harmful variations of *bupropion,* therefore, …This potential injury to Plaintiff's reputation are insufficient to justify the extraordinary relief of a TRO.

448 F. Supp. 2d at 165.

In the instant case the situation is that failure to establish bioequivalence using appropriate clinical end points would create a FDA approval of a product that contained harmful variations of *Derma-Smoothe* referenced products.   The potential for adrenal suppression and other significant side effects, i.e. allergic reactions to peanuts, which were non-existent in the extended release tablet formulation situation in *Biovail.*

The FDA's opposition memorandum referencing substantive matters in the process still fails to address the central issue in HDI's Motion to Stay. That is, the difference between equitable relief and relief at law, i.e. an injunction or temporary restraining order verses an

- 15 -

equitable Stay. Essentially what HDI is praying for in relief is granting an equitable Motion to Stay. Considering an FDA ruling prior to or at the same time as granting an ANDA in question would moot all further court proceedings, and make the entire Citizen's Petition process meaningless, as is the acknowledged policy of the FDA. It would also give the FDA a free pass on disregarding their regulatory mandates set forth in the C.F.R. to a Citizen's Petition.

Therefore, the granting of an equitable Motion to Stay is essential to preserve HDI's right to judicial review. 5 U.S.C. § 706(1). An Order for an Equitable Stay is essential to preserve judicial review in this case. Accordingly, the FDA's position should be rejected and HDI's Motion to Stay must be granted upon equitable stay grounds.

RESPECTFULLY SUBMITTED this 11th day of May, 2007.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of May, 2007, I electronically filed the foregoing **Plaintiff, Hill Dermaceuticals, Inc.'s, Reply to Defendants' Opposition to Motion to Stay** with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the Notice of Electronic Filing by First-Class mail delivery to the parties listed below:

Gerald C. Kell, Senior Trial Counsel
Office of Consumer Litigation
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, D.C.  20044

Peter D. Keisler, Assistant Attorney General
C. Frederick Beckner, III, Deputy Assistant Attorney General
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530-0001

Paige H. Taylor
Associate General Counsel, Litigation
U.S. Department of Health & Human Services
Office of the General Counsel
5600 Fishers Lane
Rockville, MD  20857

Office of the United States Attorney
For the District of Columbia
Attention:  Civil Process Clerk
555 4th Street, N.W.
Washington, DC  20530

Respectfully Submitted,

Dated:  May 11, 2007.

By:     /s/ Larry M. Roth
        Larry M. Roth (admitted *pro hac vice*)
        (Fla. Bar No. 20811)
        LAW OFFICE OF LARRY M. ROTH, P.A.
        1615 Edgewater Drive, Suite 180 [32804]
        P.O. Box 547637
        Orlando, Florida 32854-7637
        Tel:    (407) 872-2239 Fax:(407) 872-6927

By:     /s/ Simon E. Dance
        Simon E. Dance (D.C. Bar No. 436432)
        David L. Rosen  (D.C. Bar No. 438634)
        FOLEY & LARDNER, LLP
        3000 K Street, N.W., Suite 500
        Washington, D.C. 20007-5101
        Tel:    (202) 672-5430
        Fax:    (202) 672-5399
        *Attorneys for Plaintiff*

- 17 -